**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| NICHOLAS ROSEN, TAMER NASSAR, and REGINALD ST. JEAN, individually and on behalf of others similarly situated, | Civ. No.: |
| Plaintiffs, | CLASS ACTION |
| vs. | |
| MERCEDES-BENZ USA, LLC and DAIMLER AG, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiffs Nicholas Rosen, Tamer Nassar, and Reginald St. Jean bring this action against Defendants Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG (collectively, "Defendants" or "Mercedes-Benz"), by and through their attorneys, individually and behalf of all others similarly situated, and allege as follows:

## INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former Mercedes-Benz vehicle owners and lessees of model years ("MY") 2015-2019 W205 vehicles, including but not limited to the C300 models, that suffer from a manufacturing and material defect

that results in raw fuel leakage within the engine compartment (the "Class Vehicles" or "Vehicles").[1]

2.      This action arises from Defendants' failure, despite their longstanding knowledge of this material and manufacturing defect, to disclose to Plaintiffs and other consumers that the Class Vehicles are predisposed to fuel line leakage within the engine compartment that results in a dangerous situation for Class Vehicle occupants including the inhalation of dangerous fuel (gasoline) fumes, vehicle stalling, and risk of vehicle fire (the "Fuel Leak Defect" or "Defect").

3.      Significantly, and as a result of the Fuel Leak Defect, raw fuel may leak into the engine compartment, including onto the engine and/or exhaust, from the fuel line connections to the high-pressure fuel pump located at the rear of the engine compartment. The Fuel Leak Defect also causes the occupants to suffer a strong fuel smell while operating the Class Vehicles.

4.      Not only did Mercedes-Benz actively conceal the fact that the Class Vehicle's fuel systems contain a manufacturing defect and require costly repairs to fix, it did not reveal that the existence of this defect would diminish the intrinsic and resale value of the Class Vehicles.

5.      Mercedes-Benz has long been aware of the Fuel Leak Defect. Despite

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

its longstanding knowledge of this defect, Mercedes-Benz has been unable and/or unwilling to adequately repair the Class Vehicles when the Defect manifests.

6.      Many owners and lessees of Class Vehicles have communicated with Defendants and their agents to request that Mercedes-Benz remedy and/or address the Fuel Leak Defect and/or resultant damage at no expense. Defendants have failed and/or refused to do so—often conveying to Vehicle owners and lessees that fuel system components in Class Vehicles cannot be repaired under warranty.

7.      For customers whose Vehicles are within the New Vehicle Warranty (which extends for the shorter of 48 months or 50,000 miles) and the Certified Pre-Owned Warranty (extending for a total of 60 months and unlimited mileage from the in-service date), Mercedes-Benz has done nothing to address or correct the Fuel Leak Defect when it manifests in the Class Vehicles. Instead, Mercedes-Benz has denied their requests to provide a repair under warranty and instead forced Class members to pay out of pocket.

8.      Despite notice and knowledge of the Fuel Leak Defect from the numerous consumer complaints it has received, information received from Mercedes-Benz dealerships, pre-sale durability testing, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records, Mercedes-Benz has not recalled the Class Vehicles to repair the Fuel Leak Defect,

offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out-of-pocket expenses for repairs to the Defect in their vehicles.

9.      As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value. The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

10.     Had Plaintiffs and other Class members known about the Fuel Leak Defect at the time of purchase or lease, they would not have purchased or leased the Class Vehicles, or would have paid substantially less for the Class Vehicles.

11.     As a result of the Fuel Leak Defect and the considerable monetary costs associated with attempting to repair such defect, Plaintiffs and Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Mercedes-Benz's conduct.

12.     Accordingly, Plaintiffs bring this action to redress Defendants' violations of California's Consumer Legal Remedies Act, California's Unfair Competition Law, New Jersey's Consumer Fraud Act, Georgia's Fair Business Practices Act, Georgia's Uniform Deceptive Trade Practices Act, and also to seek

recovery for Defendants' breach of express warranty, breach of implied warranty, common law fraud, breach of the covenant of good faith and fair dealing, and, alternatively, unjust enrichment.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

15.     This Court has general personal jurisdiction over Defendants because they have corporate headquarters and offices located in this judicial district, have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the Northern District of Georgia and throughout the United States.

## THE PARTIES

### Plaintiff Nicholas Rosen

16.     Plaintiff Nicholas Rosen is a citizen of the State of California and resides in Castro Valley, California.

17.     In or around December 2018, Plaintiff Rosen purchased a 2016 Certified Pre-Owned Mercedes-Benz C300 from Mercedes-Benz of Pleasanton, an authorized Mercedes-Benz dealer located in Pleasanton, California.

18.     At the time that Plaintiff Rosen purchased his vehicle, he was provided with a Certified Pre-Owned Warranty, which included one additional year of coverage with no mileage limitations. In addition, Plaintiff Rosen purchased an additional two-year warranty which covers his vehicle for two years from the time the Certified Pre-Owned Warranty ended with no mileage limitations.

19.     Prior to purchasing the Class Vehicle, Plaintiff Rosen test drove the

Class Vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Mercedes-Benz sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Rosen of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise. Plaintiff Rosen relied on Defendants' misrepresentations and omissions in deciding to purchase his vehicle.

20.    Plaintiff Rosen purchased (and still owns) this vehicle, which is used for personal, family, and/or household uses. His vehicle bears Vehicle Identification Number 55SWF4JB9GU158962.

21.    At around 55,000 miles on the odometer of his vehicle, approximately 4,000-5,000 miles after the expiration of the New Vehicle Warranty, Plaintiff Rosen began noticing a fuel smell in his vehicle's cabin. As a result, he contacted Mercedes-Benz of Pleasanton and requested a repair under warranty. He was told that his warranty had expired, but that he could bring in his vehicle for a diagnosis and pay out-of-pocket for the evaluation. On or around March 2, 2020, Plaintiff Rosen took his vehicle to Mercedes-Benz of Pleasanton to obtain a repair for the fuel leak. The service report indicated that "insulation smells slightly of fuel," and continued:

[S]prayed leak trace on and around high pressure pump. Started vehicle, did not notice any obvious leaking. Removed rear seat. Removed service cover for fuel filter. No noticeable leaks or smells. Will need to let vehicle cool down and will recheck later.

22.     The next day, Mercedes-Benz of Pleasanton "checked leak in the morning," and indicated that "fuel leaking from low fuel pressure line to high pressure pump. Recommend replacing, not covered under warranty." The dealership also advised Plaintiff Rosen that the fuel leak was not covered by his Certified Pre-Owned Warranty because it was a "wear item."

23.     Plaintiff Rosen agreed to have Mercedes-Benz of Pleasanton perform the recommended service, for which he was charged $449.52.  In performing the repair, Mercedes-Benz of Pleasanton installed three parts in Plaintiff Rosen's vehicle: (1) No. 274-070-35-00 fuel house; and (2) two No. 006-997-18-90 loom ties.

24.     Plaintiff Rosen has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Fuel Leak Defect, including, but not limited to, out of pocket loss associated with the Fuel Leak Defect, future attempted repairs, and diminished value of his vehicle.

25.     Neither of the Defendants, nor any of their agents, dealers, or other representatives, informed Plaintiff Rosen of the existence of the Fuel Leak Defect prior to purchase.

**Plaintiff Tamer Nassar**

26.    Plaintiff Tamer Nassar is a citizen of the State of Connecticut and resides in Brookfield, Connecticut.

27.    On or about October 19, 2019, Plaintiff Nassar purchased a 2016 Certified Pre-Owned Mercedes C300 from Benzel-Busch, an authorized Mercedes-Benz dealer located in Englewood, New Jersey.

28.    At the time that Plaintiff Nassar purchased his vehicle, he was also provided with a Certified Pre-Owned Warranty, which included one additional year of coverage with no mileage limitations and is currently scheduled to expire in July 2021.

29.    Prior to purchasing the vehicle, Plaintiff Nassar test drove his Class Vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Mercedes-Benz sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives informed Plaintiff Nassar of the Defect's existence at any time either prior to or following his purchase, whether at the point of sale or otherwise. Plaintiff Nassar relied on Defendants' misrepresentations and omissions in deciding to purchase his vehicle.

30.    Plaintiff Nassar purchased (and still owns) this vehicle, which is used

for personal, family, and/or household uses. His vehicle bears Vehicle

Identification Number 55SWF4KB9GU138385.

31.     After only a few months of owning his vehicle, Plaintiff Nassar began

to notice a fuel smell when his vehicle was idling, and he was concerned that it was

smoke. As a result, he brought the vehicle to Mercedes-Benz of Danbury, an

authorized Mercedes-Benz dealer located in Danbury, Connecticut, seeking repairs

under the vehicle's Certified Pre-Owned Warranty (expiring in July 2021).

32.     Mercedes-Benz of Danbury was unable to replicate the smell that

Plaintiff Nassar had experienced, but it charged him approximately $179.26 as a

diagnostic fee. When Plaintiff Nassar learned of the diagnostic charge, he asked

Benzel-Busch, the Mercedes-Benz dealership from which he purchased his vehicle,

to reimburse him. After several months, Benzel-Busch eventually agreed to

reimburse Plaintiff Nassar for the diagnostic charge.

33.     Plaintiff Nassar decided to continue to drive his vehicle despite the

smell until late 2020, when the smell began getting stronger.

34.     By approximately early 2021, the fuel smell in Plaintiff Nassar's

vehicle had become intolerable.  Also in early 2021, Plaintiff Nassar saw many

examples of people complaining online about the same issue.

35.     Therefore, on or about February 8, 2021, Plaintiff Nassar brought his

vehicle back to Mercedes-Benz of Danbury so that they could attempt to address the fuel smell within his cabin. Mercedes-Benz of Danbury advised Plaintiff Nassar that the work would cost approximately $461, and refused to cover it under warranty.

36.    Plaintiff Nassar called Mercedes-Benz Customer Support to see whether they would cover the cost of the repair under his vehicle's warranty and he filed a case with them.  Mercedes-Benz Customer Support returned his call and informed him that it would not cover the necessary repairs under warranty.

37.    When Plaintiff Nassar retrieved his vehicle from Mercedes-Benz of Danbury, he received a dealership report which stated:

> [I]nspected vehicle and found low pressure fuel hoses seeping. Removed lower engine panels. Removed upper engine cover. Removed high pressure fuel pump crash plate and noise cover. Removed upper and lower fuel lines from rear of engine. Installed new hoses. Reinstalled all components in reverse order. Tested and verified repair. Fuel smell now eliminated.

38.    In performing the repair, Mercedes-Benz of Danbury installed four parts in Plaintiff Nassar's vehicle: (1) No. 205-470-02-75 fuel hose; (2) No. 274-070-35-00 fuel house; and (3) two No. 006-997-18-90 loom ties.

39.    Mercedes-Benz of Danbury charged Plaintiff Nassar $461.72 for the repair.

40.    Plaintiff Nassar has suffered an ascertainable loss as a result of

Defendants' omissions and/or misrepresentations associated with the Fuel Leak Defect, including, but not limited to, out of pocket losses associated with the Fuel Leak Defect, future attempted repairs, and diminished value of his vehicle.

41.    Neither of the Defendants, nor any of their agents, dealers, or other representatives, informed Plaintiff Nassar of the existence of the Fuel Leak Defect prior to purchase.

**Plaintiff Reginald St. Jean**

42.    Plaintiff Reginald St. Jean is a citizen of the State of New Jersey and resides in Maplewood, New Jersey.

43.    In or around January 2018, Plaintiff St. Jean purchased a 2015 Certified Pre-Owned Mercedes C300 from Ray Catena Auto Group, an authorized Mercedes-Benz dealer located in Union, New Jersey.

44.    At the time that Plaintiff Rosen purchased his vehicle, he was also provided with a Certified Pre-Owned Warranty, which included one additional year of coverage with no mileage limitations.

45.    Prior to purchasing the vehicle, Plaintiff St. Jean test drove the Class Vehicle, viewed advertisements for the vehicle and the vehicle's window sticker, and spoke with Mercedes-Benz sales representatives concerning the vehicle's features. Neither Defendants nor their agents, dealers, or other representatives

informed Plaintiff St. Jean of the Defect's existence at any time either prior to or

following his purchase, whether at the point of sale or otherwise. Plaintiff St. Jean

relied on Defendants' misrepresentations and omissions in deciding to purchase his

vehicle.

46.     Plaintiff St. Jean purchased (and still owns) this vehicle, which is used

for personal, family, and/or household uses. His vehicle bears Vehicle

Identification Number 55SWF4KB3FU064430.

47.     In approximately early 2020, Plaintiff St. Jean began to notice a

strong fuel smell in the cabin of his vehicle. As a result, he contacted Ray Catena

Auto and requested a repair under warranty, but the dealership advised Plaintiff St.

Jean that the warranty on his vehicle had expired and that repairs would cost

$7,000 (which would include a variety of other items), along with a repair to

address the fuel leak in his cabin.

48.     Plaintiff St. Jean thought that the proposed repair work was too

expensive, so he took his vehicle to Irvington Getty in Irvington, New Jersey.

There, he received a second estimate for substantially similar work for $1,394.94.

Plaintiff St. Jean understands about $600 to $700 of the repairs were for repairing

the Fuel Leak Defect.

49.     In or around January 2021, Plaintiff St. Jean purchased the following

replacement parts recommended by Irvington Getty: (1) No. 274-070-35-00 (fuel hose); (2) No. 274-070-33-32-64 (fuel line complete); and (3) No. 205-470-02-75 (fuel hose); and (4) No. 274-226-0-85 (soundproofing), and also paid $48.09 for shipping. These parts were installed by Irvington Getty on or about January 30, 2021.

50.    Plaintiff St. Jean has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Fuel Leak Defect, including, but not limited to, out of pocket losses associated with the Fuel Leak Defect, future attempted repairs, and diminished value of his vehicle.

51.    Neither of the Defendants, nor any of their agents, dealers, or other representatives, informed Plaintiff St. Jean of the existence of the Fuel Leak Defect prior to purchase.

**The Defendants**

52.    Defendants are automobile design, manufacturing, distribution, and/or servicing corporations doing business within the United States. Furthermore, Defendants design, manufacture, distribute, market, service, repair, sell, and lease passenger vehicles, including the Class Vehicles.

53.    Defendant Daimler AG, with world headquarters in Stuttgart, Germany, is an automobile design, manufacturing, sale, leasing, distribution, and

servicing corporation organized under the laws of Germany. Daimler AG is the

parent corporation of Mercedes-Benz USA, LLC.

54.    Mercedes-Benz USA, LLC has its principal place of business at 1

Mercedes-Benz Drive, Sandy Springs, Georgia 30328.

55.    Upon information and belief, Defendant MBUSA communicates with

Defendant Daimler AG concerning virtually all aspects of the Mercedes-Benz

products it distributes within the United States.

56.    Upon information and belief, the design, manufacture, distribution,

service, repair, modification, installation, and decisions regarding the fuel systems

within the Class Vehicles were performed exclusively by Defendants.

57.    Upon information and belief, Defendants jointly develop the owner's

manuals, warranty booklets, and information included in maintenance

recommendations and/or schedules for the Class Vehicles.

58.    Defendants MBUSA and Daimler, AG engage in continuous and

substantial business in Georgia.

59.    Defendants also jointly design, determine the substance of, and affix

to Mercedes-Benz vehicles the window stickers visible on every new Mercedes-

Benz vehicle offered for sale at their authorized dealerships. Defendants control

the content of these "Monroney" stickers—their authorized dealerships have no

input with respect to their content. Vehicle manufacturers like Defendants are legally required to affix a window sticker to every vehicle offered for sale in the United States pursuant to the Automobile Information Disclosure Act of 1958, 15 U.S.C. §§ 1231, *et seq*., which, among other things, prohibits the removal or alteration of the sticker by anyone other than the ultimate purchaser prior to the sale of the car, including the dealership at which the vehicle is offered for sale.

## **TOLLING OF STATUTES OF LIMITATION**

60.    Any applicable statute(s) of limitations has been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and members of the Class could not have reasonably discovered the true, latent defective nature of the Fuel Leak Defect until shortly before this class action litigation was commenced.

61.    Defendants were and remain under a continuing duty to disclose to Plaintiffs and members of the Class the true character, quality, and nature of the Class Vehicles and that they will require costly repairs and the diminished resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FACTUAL ALLEGATIONS

**A.    The Fuel Leak Defect within the Class Vehicles.**

62.    Mercedes-Benz C-Class vehicles comprise a line of compact executive cars that were first introduced in 1993 to replace Mercedes-Benz's W201 range of cars. The first W202 sedan was produced on June 1, 1993, the first W203 sedan was produced on July 18, 2000, the W204 was launched in 2007, and the W205 was launched in 2014 at the North American International Auto Show.

63.    As background, the fuel systems in the Class Vehicles contain a fuel tank, a single electric fuel pump located within the fuel tank, fuel lines, a high-pressure mechanical secondary fuel pump located within the engine compartment, and fuel rails located on the engine. The fuel is pumped from the fuel tank by the in-tank fuel pump, then through the fuel lines located under the vehicle where it travels to the high-pressure fuel pump in the engine compartment. The high-pressure fuel pump creates additional pressure within the fuel system before the fuel is sent to the fuel rails and fuel injectors to be utilized by the engine during the combustion cycle. Below is a picture of the mechanical high-pressure fuel pump:



64.    The fuel rails and high-pressure fuel pump are located in the rear of the engine compartment. Here, the high-pressure fuel pump has two fuel line connections. A braided low-pressure fuel line hose comes into the fuel pump (the "braided hose"), and a hard fuel line leads out to the fuel rail. Together, these constitute the "upper connection." Below is a picture depicting the location of the high-pressure fuel pump within the engine compartment:



65.    There is a second fuel line that is located in the underside of the vehicle, visible through a gap in the underside panel that protects the vehicle's components. It connects on one side to the fuel pump, and on the other to the hard fuel line on the engine and serves to separate the hard fuel line from the chassis (the "rubber hose"). On the hard fuel line side, the connector is a fuel test port. This constitutes the "lower connection."

66.    In the Class Vehicles, the Defect causes raw fuel leaks at these high-pressure fuel pump connections, resulting in fuel leakage within the engine compartment. Fuel leakage within the presence of a potential ignition source

creates a risk of fire.

67.    Upon information and belief, fuel leakage at these connection points is a result of defective fuel hoses and/or the use of incorrect manufacturing processes to affix the clamps as needed at the connection points, and/or uses improper materials. The below picture illustrates the connections utilized by Defendants to secure the fuel lines.  As a result of Defendants' manufacturing process, these connections fail to prevent fuel leakage within the engine compartments of the Class Vehicles.



68.    In the Class Vehicles, the cabin air filter pulls air from the engine compartment into the cabin for use in the heating and cooling. As a result of the

Fuel Leak Defect, fuel fumes are sucked into the cabin, where the fuel fumes can be detected and unavoidably inhaled by vehicle owners.

69.    According to authorities on the issue, breathing small amounts of gasoline vapors can lead to nose and throat irritation, headaches, dizziness, nausea, vomiting, confusion, and breathing difficulties.[2] One of the greatest risks of gasoline exposure is the harm it can cause the lungs when fumes are inhaled.[3]

70.    Regardless of the safety risks the Defect poses, Mercedes-Benz instructs Class members to continue to drive their Class Vehicles and refuses to replace the fuel lines and/or connectors, in some cases necessitating that consumers pay out of pocket to repair their vehicles. This results in a previously undisclosed increase in the cost of maintenance for Class members. Additionally, this results in a greater safety risk while operating the vehicle due to the presence of raw fuel leaking near an ignition source and risk of fire.

**B.    Mercedes-Benz's Knowledge of the Fuel Leak Defect**

71.    In or about March 2018, Daimler Vans USA ("DVUSA") had received a request for preliminary evaluation information from the National

---

[2] Gasoline Fact Sheet (state.il.us) (last visited Feb. 24, 2021).
[3] Gasoline and Health: Symptoms, Causes & Effects (healthline.com) (last visited Feb. 24, 2021).

Highway Traffic Safety Administration ("NHTSA") regarding reports of fuel leakage in MY 2016–2017 Mercedes-Benz Metris vans.

72.     In or around May 2018, DVUSA had responded to NHTSA's preliminary evaluation request, detailing its internal analysis and a preliminary technical assessment. Investigations that were conducted included a detailed analysis of US market parts used in the upper connection of the fuel line to the fuel pump. Analysis constituted a visual examination of the affected area and a check of its conditions, dimensions, tightness, material properties, and more. Daimler AG also tested and analyzed the lower connection point of the transition hose in the underbody fuel line and used simulations to reproduce the conditions customers described when a fuel smell was detected.

73.     In or around November 2018 Daimler AG initiated the voluntary recall and remedy. The remedy included replacing the hose and clamp at the lower connection and correcting mounting as well as replacing the hose at the upper connection. According to Daimler AG, an unsuitable tool had been used to fix the clamp on the hose in the lower connection. The replacement hose at the upper connection was provided by a different supplier and was used for its improved material qualities.

74.    Defendant encountered a similar situation in Russia. After numerous reports of fuel smells or fuel leaks reported by Mercedes-Benz customers in Russia, Daimler AG also ordered a recall of over 12,000 vehicles in November 2018.

75.    Yet, after numerous reports of fuel leakage and fuel odor reported by owners and lessees of the Class Vehicles, Mercedes-Benz has neglected to recall the affected Class Vehicles.

76.    Despite being made aware of the Defect through customer complaints, Mercedes-Benz continues to deny the existence of the Defect to Class Members, and also refuses to make the necessary cost-free repairs to correct the Defect. Instead, Mercedes-Benz continues to force Class Members to pay out-of-pocket to correct this dangerous safety hazard in the Class Vehicles.

77.    Furthermore, Mercedes-Benz's failure to notify the general public or the owners or lessees of the Class Vehicles of the Fuel Leak Defect is particularly egregious because when the Fuel Leak Defect manifests it results in the presence of raw fuel near an ignition source, resulting in an increased risk of fire that places drivers, the occupants of their vehicles, and the occupants of other vehicles on the road, in a dangerous situation where their Class Vehicles may catch on fire.

78.    Engines are manufactured to function for periods (and mileages)

substantially in excess of those specified in Defendants' warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry of fuel seepage or the intake of fuel vapors into the cabin for significantly longer than the limited lengths of time and mileages identified in Defendants' warranties.

79.    Mercedes-Benz holds itself out as an "innovative premium brand."[4] MBUSA claims to "deliver the best or nothing, safety must come first."[5] Defendants purport to use cutting-edge technologies to ensure high quality and claim that "every Mercedes-Benz is engineered to make an accident less severe, less damaging, and even less likely."

80.    Automobiles must incorporate materials and manufacturing processes that are able to withstand foreseeable usage conditions. A vehicle can suffer extensive damage and costly repairs from customary environmental and usage conditions when it suffers from defective manufacturing processes or materials.

81.    In many instances, consumers have incurred and will continue to incur expenses for repair and/or replacement of fuel system components despite such Fuel Leak Defect having been contained in the Class Vehicles when manufactured

---

[4] *See, e.g.,* https://www.mercedes-benz.com/en/innovation/automotive-innovations-award-2020/ (last visited Feb. 24, 2021).
[5] *See, e.g.,* https://www.mbusa.com/en/best-or-nothing/safety (last visited Feb. 24, 2021). The remaining quotes in this paragraph all originate on this webpage.

by Defendants.

82.     Upon information and belief, Defendants, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration (NHTSA), (4) warranty and post-warranty claims, (5) internal pre-sale durability testing and TSBs, and (6) other various sources, were well aware of the Defect but failed to notify customers of the nature and extent of the problems with Class Vehicles or to provide any adequate remedy.

83.     Defendants failed to adequately research, test, and/or manufacture the fuel lines and fuel line connections within the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

84.     Defendants are experienced in the manufacture of consumer vehicles. As experienced manufacturers, Defendants conduct tests, including pre-sale durability testing, on incoming components, including the fuel system components, to verify that the parts are free from defect and align with Defendants' specifications.

85.     Mercedes-Benz Research & Development North America, Inc. purports that "Mercedes-Benz vehicles are simulated, tested and analyzed with US-

specific conditions that result in products that meet and exceed environmental needs and legislative rules."[6] Mercedes-Benz's Long Beach, California and Ann Arbor, Michigan testing locations also "function as liaisons to…Mercedes-Benz in Germany." Mercedes-Benz also claims that "vehicles prove their capabilities in extreme heat, cold, humidity and altitude." Thus, Defendants knew or should have known of the Defect through their comprehensive testing methods.

86.    Through these quality control metrics, Defendants knew or should have known that the fuel systems in the Class Vehicles were defective.

87.    Despite such assurances and procedures, Defendants have not contacted Class Members by direct mail, email, or telephone to inform them how they can receive free repairs related to the Fuel Leak Defect within the United States. Additionally, upon information and belief, Defendants have not provided information regarding the Defect on their websites or through the news media.

88.    Defendants also expressly warranted the Class Vehicles to be free from defects for a period of, at minimum, 48 months or 50,000 miles, under the New Vehicle Limited Warranty or 60 months and unlimited mileage from the in-service date under the Certified Pre-Owned Warranty.  Both warranties are applicable to the Fuel Leak Defect; however, Defendants have failed to correct the

---

[6] *See* https://www.mbrdna.com/teams/test-regulatory-affairs/ (last visited Feb. 24, 2021). The quotes in this paragraph originate on this webpage.

issue.

89.    Buyers, lessees, and other owners of the affected Vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of the Vehicles. Had these buyers and lessees known of the defect and the potential harm, they would have taken steps to avoid that harm and/or would have paid less for the Vehicles than the amounts they actually paid, or would not have purchased them.

**C.    Complaints by Other Class Members.**

90.    Plaintiffs' experiences are by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Fuel Leak Defect within the Class Vehicles.[7]

91.    Class Vehicle owners have publicly complained to the United States government about the Defect in Class Vehicles since the vehicle has been released.

---

[7] *See* https://mbworld.org/forums/c-class-w205/737303-dealer-says-fuel-smell-leak-w205-2015-c300-base.html; https://mbworld.org/forums/c-class-w205/765134-fuel-system-diagram-other-help.html#post7925926; https://www.carproblemzoo.com/mercedesbenz/c300/other-fuel-system-problems.php; and https://www.carcomplaints.com/Mercedes-Benz/C300/2015/fuel_system/fuel_propulsion_system.shtml (last visited Feb. 24, 2021).

The Office of Defects Investigation (ODI) is an office within the National

Highway Traffic Safety Administration (NHTSA). ODI conducts defect

investigations and administers safety recalls to support the NHTSA's mission to

improve safety on the Nation's highways.[8] All automobile manufacturers routinely

monitor and analyze NHTSA complaints because this information is used in

determining if a recall should be issued.

92.    The following is a sampling of the complaints submitted to ODI by

Mercedes C-Class owners. These publicly available complaints, filed as early as

March 2019, evidence Defendants' prior knowledge of the Fuel Leak Defect, the

negative experiences encountered by Class Members, and the financial burden this

places on them.

**NHTSA ID Number:** 11396042
**Complaint Date** February 12, 2021
**Incident Date** February 11, 2021
**Consumer Location** COLLIERVILLE, TN
**Vehicle Identification Number** WDDWJ4KB9HF****
**Summary of Complaint**
A FUEL LINE IN THE ENGINE COMPARTMENT JUST ABOVE THE SKID
PLATE ON THE DRIVES SIDE JUST RIGHT OF THE FRONT WHEEL WELL
LEAKS FUEL WHERE THE LINE IS CRIMPED COMING FROM THE HIGH
PRESSURE FUEL PUMP. FUEL COLLECTS ON THE SKID PLATE AND
WHEN A STOP AT IDEA PRODUCES A STRONG FUEL SMELL IN THE
CABIN OF THE CAR

---

[8] *See* https://www-odi.nhtsa.dot.gov/recalls/recallprocess.cfm (last visited Feb. 24,
2021). Indeed, automobile manufacturers are required by law to report any
potential safety defects to the United States government.

**NHTSA ID Number:** 11395508
**Complaint Date** February 10, 2021
**Incident Date** February 9, 2021
**Consumer Location** BROOKFIELD, CT
**Vehicle Identification Number** 55SWF4KB9GU****
**Summary of Complaint**
THE VEHICLE HAS A STRONG GAS SMELL WHEN THE VEHICLE IS
IDLING. DEALER CHANGED THE 2 FUEL LINES AND CLAMPS. IT'S
COMMON PROBLEM IN W205 C300 CARS.

THE CAR WAS UNDER EXTENDED WARRANTY AND THE DEALER
REFUSED TO COVER IT UNDER WARRANTY EVEN THOUGH THE CAR
HAS 29K MILES. THERE SHOULD BE A RECALL FOR THESE FUEL
HOSES.

THERE IS A CLASS ACTION INVESTIGATION:
HTTPS://WWW.SAUDERSCHELKOPF.COM/INVESTIGATIONS/AUTOMOTI
VE/MERCEDES-C300-AND-GLA250- FUEL -SMELL-CLASS-ACTION-
INVESTIGATION/

YOU CAN SEE MULTIPLE PEOPLE COMPLAINING ABOUT THE SAME
FUEL LINES;

- HTTPS://YOUTU.BE/LQZZMGFDQ3O

- HTTPS://MBWORLD.ORG/FORUMS/C-CLASS-W205/737303-DEALER-
SAYS- FUEL -SMELL-LEAK-W205-2015-C300-BASE.HTML

**NHTSA ID Number:** 11390531
**Complaint Date** January 28, 2021
**Incident Date** October 19, 2019
**Consumer Location** Unknown
**Vehicle Identification Number** 55SWF4JB6FU****
**Summary of Complaint**
THERE IS A FUEL HOSE (PARTS NUMBER: 274 070 3500) CONNECT TO
THE HIGH PRESSURE PUMP IN FRONT ENGINE AREA. THE FUEL HOSE
WAS FASTENED BY A CLAMP (NOT SURE THE PARTS NUMBER) .

BECAUSE OF THE DESIGN FLAW, THIS CLAMP WILL LOOSE SINCE IT'S A SNAP JOINT ASSEMBLIES NOT TIGHTEN BY SCREWS. UNDER THIS SITUATION, THE FUEL HOSE WILL LOOSE AND AFFECTED BY THERMAL EXPANSION, THIS PROBLEM WILL CAUSE FUEL LEAK/SEEPING. WE CAN SMELL FUEL NEAR THE PUMP BEFORE WE START CAR IN COLD IN THE MORNING AND THIS SMELL CAN BE SMELLED UNTIL THE ENGINE WORKING INTO THE NORMAL OPERATING TEMPERATURE OR WHEN WE TURN ON THE AC OR HEATER . FUEL IS A VERY CRITICAL SAFETY PROBLEM AND USUALLY WE CANNOT TAKE NOTICE OF THIS POTENTIAL PROBLEM.THIS IS BEEN HAPPENING SINCE 11/19/2019 THE DATE WHEN I BOUGHT THE CAR TILL NOW

**NHTSA ID Number:** 11390106
**Complaint Date** January 26, 2021
**Incident Date** December 1, 2020
**Consumer Location** OVERLAND PARK, KS
**Vehicle Identification Number** 55SWF4KB2FU****
**Summary of Complaint**
THE FUEL SMELL IS COMING FROM THE RUBBER FUEL, THEY ARE NOT COVER BY MY CPO- WARRANTY ( 3000 USD PAID PACKAGE). I FOUND OVER 100 FRIENDS ON FACEBOOK GROUP HAS THE SAME PROBLEMS. DEALLER REFUSE TO COVER. MY KID IS FELL BAD ABOUT THE SMELL LEAKING.

**NHTSA ID Number:** 11388519
**Complaint Date** January 17, 2021
**Incident Date** January 10, 2021
**Consumer Location** DORCHESTER, MA
**Vehicle Identification Number** WDC0G4KB8GF****
**Summary of Complaint**
FUEL SMELL ENTERING CABIN AFTER START UP, FUEL LINE ON DRIVERS SIDE NEAR STEERING COLUMN LEAKING, GOOGLED PROBLEM AND SEEMS TO BE COMMON OCCURRENCE WITH GLC300, AND MERCEDES C CLASS BUT NO RECALL, THIS IS THE SAME PROBLEM AS THE MERCEDES METRIS HAS BUT THERE WAS AN RECALL ISSUED FOR THAT MODEL

**NHTSA ID Number:** 11387131
**Complaint Date** January 8, 2021
**Incident Date** January 2, 2020
**Consumer Location** HARLINGEN, TX
**Vehicle Identification Number** 55SWF4KB5FU****
**Summary of Complaint**
INTERMITTENT FUEL LEAK. REAL BAD GAS SMELL IN CABIN COMING
THROUGH THE VENTS. DRIVER SIDE, IN BACK, DOWN BETWEEN THE
ENGINE AND BODY.

THE FUEL LINES ARE PRESSURIZED, SO IT MIGHT ONLY LEAK WHEN
THE PRESSURE BUILDS UP. I KEPT GETTING A STRONG GAS SMELL
THE GARAGE AFTER PARKING FOR LONG PERIODS.

**NHTSA ID Number:** 11385654
**Complaint Date** December 30, 2020
**Incident Date** December 30, 2020
**Consumer Location** SHAWNEE, KS
**Vehicle Identification Number** 55SWF4KB5GU****
**Summary of Complaint**
GAS SMELL COMING THROUGH THE VENTS STARTED OFF EVERY
NOW AND THEN AND BECAME MORE FREQUENT. PULLED IT IN THE
GARAGE AND THE GAS FUMES MADE THE TOTAL GARAGE SMELL.
TOOK IT TO THE DEALER AND THEY SAID IT IS FUEL LINE, THAT SITS
NEAR THE ENGINE. IT IS IN THE SHOP NOW. AFTER GOOGLING I SEE
SEVERAL OTHER PEOPLE HAVE HAD THIS ISSUE WITH THIS CAR.
THEY CANNOT TELL ME YET WHAT CAUSED THE PROBLEM, I AM
WAITING TO HEAR THAT

**NHTSA ID Number:** 11385196
**Complaint Date** December 28, 2020
**Incident Date** December 20, 2020
**Consumer Location** ANNA, TX
**Vehicle Identification Number** 55SWF4JB7GU****
**Summary of Complaint**
THERE WAS AN ODOR OF FUEL INSIDE THE CABIN. THE VEHICLE WAS
TAKEN TO AN INDEPENDENT MECHANIC, AND THE TECHNICIAN
INFORMED ME THAT THERE WAS AN STRONG ODOR OF FUEL WHEN

HE LIFTED THE HOOD AND ADVISED THE CONTACT TO TAKE THE VEHICLE TO A MERCEDES DEALER BECAUSE HE WAS NOT CERTIFIED TO SERVICE THE VEHICLE.

**NHTSA ID Number:** 11384705
**Complaint Date** December 23, 2020
**Incident Date** November 29, 2019
**Consumer Location** RIDGEFIELD, NJ
**Vehicle Identification Number** WDDZF4KB8HA****
**Summary of Complaint**
UPON STARTUP IN COLD WEATHER...STRONG ODOR OF GASOLINE CAN BE NOTICED IN PASSENGER COMPARTMENT. INTERNET SEARCH SHOWS THIS TO BE A PROBLEM WITH THE FUEL LINE CONNECTED TO THE HIGH PRESSURE FUEL PUMP.

**NHTSA ID Number:** 11383821
**Complaint Date** December 16, 2020
**Incident Date** September 15, 2020
**Consumer Location** HOUSTON, TX
**Vehicle Identification Number** WDDWF4JB5HR****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2017 MERCEDES BENZ C300. THE CONTACT STATED THAT WHILE THE HEATER WAS ACTIVATED, THERE WAS AN ABNORMAL FUEL ODOR COMING FROM THE VENTS INTO THE VEHICLE. THE VEHICLE WAS NOT TAKEN TO A DEALER OR MECHANIC TO BE DIAGNOSED. THE CONTACT STATED THAT THE FUEL ODOR ONLY OCCURRED DURING THE WINTER. THE CONTACT ALSO STATED THAT THE FUEL TANK HOSE CLIP THAT GOES TO THE ENGINE BECAME LOOSE AND CAUSE THE FUEL ODOR TO PENETRATE INSIDE THE VEHICLE. THE MANUFACTURER WAS CONTACTED. THE VEHICLE WAS NOT REPAIRED. THE APPROXIMATE FAILURE MILEAGE WAS 55,000.

**NHTSA ID Number:** 11382911
**Complaint Date** December 10, 2020
**Incident Date** December 7, 2020
**Consumer Location** ELLENWOOD, GA
**Vehicle Identification Number** 55SWF4JB2GU****

**Summary of Complaint**
TL* THE CONTACT OWNS A 2016 MERCEDES BENZ C300. THE
CONTACT STATED THAT WHEN SHE STARTED THE VEHICLE, THERE
WAS AN ODOR OF FUEL INSIDE THE CABIN. THE VEHICLE WAS
TAKEN TO AN INDEPENDENT MECHANIC, AND THE TECHNICIAN
INFORMED THE CONTACT THAT THERE WAS AN ABNORMAL ODOR
OF FUEL WHEN HE LIFTED THE HOOD AND ADVISED THE CONTACT
TO TAKE THE VEHICLE TO A MERCEDES DEALER BECAUSE HE WAS
NOT CERTIFIED TO SERVICE THE VEHICLE. THE CONTACT CALLED
ATLANTA CLASSIC CARS (1705 BOGGS RD NW, DULUTH, GA 30096)
AND INFORMED THEM OF THE FAILURE AND SCHEDULED AN
APPOINTMENT. THE MANUFACTURER WAS NOT MADE AWARE OF
THE FAILURE. THE FAILURE MILEAGE WAS APPROXIMATELY 86,000.

**NHTSA ID Number:** 11377402
**Complaint Date** December 1, 2020
**Incident Date** December 1, 2020
**Consumer Location** BRADENTON, FL
**Vehicle Identification Number** WDC0G4JB9HF****
**Summary of Complaint**
FUEL LINE LEAK:

THE TEMPERATURE IN S. FLORIDA HIT A LOW OF 45 DEGREES
TONIGHT ON 1 DEC 2020, FIRST NOTING THE ISSUE DESCRIBED. UPON
RETURN HOME FROM AN 8 MILE TOTAL TRIP TO THE STORE, MY
DAUGHTERS EXITED THE VEHICLE AND NOTED A STRONG GASOLINE
ODOR. UPON INVESTIGATION MYSELF, I FOUND GASOLINE POOLING
BEHIND THE ENGINE WHERE THE MAIN FUEL LINE CONNECTS TO A
RUBBER HOSE. THE POOLING WAS ON THE REAR OF THE
UNDERCARRIAGE COVER AS ALSO DESCRIBED BELOW.

SIMILAR CASE FOUND ONLINE:

HTTPS://WWW.BENZWORLD.ORG/THREADS/GASOLINE-LEAK.2936569/
"THERE IS A FUEL LEAK WHERE THE STEEL LINE FROM THE TANK
CONNECTS TO A RUBBER HOSE NEAR THE FIREWALL. THERE IS
APPARENTLY A REVISED FUEL LINE CONNECTOR AVAILABLE, NO
RECALL AS YET. THIS JOINT IS APPARENTLY PART OF THE LOW-

PRESSURE FUEL SYSTEM (4 BAR), NOT THE HIGH-PRESSURE SIDE (200 BAR)."

**NHTSA ID Number:** 11375930
**Complaint Date** November 23, 2020
**Incident Date** November 21, 2020
**Consumer Location** GLENDORA, CA
**Vehicle Identification Number** 55SWF4JB8FU****
**Summary of Complaint**
GAS LEAK IN FUEL LINE, WHILE RECEIVING AN OIL CHANGE FROM A LICENSED MECHANIC, HE BROUGHT TO MY ATTENTION THAT, THERE WAS FUEL LEAKING FROM THE FUEL LINE AND SHOWED (FUEL LINE SOAKED WITH GASOLINE DIRECTLY UNDER THE ENGINE), I ALSO NOTICED THAT WHEN USING THE AC THE STRONG SMELL OF GASOLINE COMES THROUGH THE VENTS.

**NHTSA ID Number:** 11374945
**Complaint Date** November 16, 2020
**Incident Date** August 1, 2020
**Consumer Location** KANSAS CITY, KS
**Vehicle Identification Number** 55SWF4JB3GU****
**Summary of Complaint**
I PURCHASED MY MB C300 USED CERTIFIED AND HAD NOTICED A FUEL SMELL. I SPOKE TO THE DEALERSHIP AND THEY SAID IT WAS NORMAL WITH MB AND NOTHING TO BE CONCERNED WITH. I HAVE NOW HAD THE CAR FOR ABOUT 5 MONTHS AND TOOK IT TO MY LOCAL MB DEALERSHIP TO FIND OUT WHAT IS GOING ON WITH THE SMELL AND THEY SAID IT WAS A KNOWN ISSUE WITH THIS MAKE MODEL AND YEAR AND IT IS NOTHING THAT WILL CAUSE HARM.WELL IT IS NOW COLD OUTSIDE AND THE MORE I USE MY HEAT THE MORE THE SMELL COMES.I CAN LITERALLY SMELL GAS IN MY HOUSE FROM THE CAR JUST BEING (NOT ON OR RUNNING) IN MY ATTACHED GARAGE. THIS IS DEFINITELY A HEALTH ISSUE BECAUSE I FEEL LIKE I MAY PASS OUT IF I STAY TOO LONG IN THE CAR WITH THE HEAT ON. SOMETHING NEEDS TO BE DONE ABOUT THIS BESIDES BEING TOLD IT'S A KNOWN ISSUE. IF ITS WIDELY KNOWN WHY HAS THERE NOT BEEN A RECALL ON IT YET. I ALSO DO NOT UNDERSTAND

WHY MY WARRANTY /EXTENDED WARRANTY DOES NOT APPLY TO
THIS

**NHTSA ID Number:** 11362900
**Complaint Date** October 5, 2020
**Incident Date** August 1, 2020
**Consumer Location** MIAMI, FL
**Vehicle Identification Number** 55SWF4KB8FU****
**Summary of Complaint**
THIS CAR LEFT ME STRANDED ON THE SIDE OF THE ROAD. THE CAR
WAS ON WORKING FINE DRIVING ALONG THEN ALL OF A SUDDEN
PUSHING THE GAS PEDAL DID NOTHING AND THE CAR WOULD NOT
MOVE. THE ENGINE SHUT OFF COMPLETELY. THE ENGINE WAS NOT
GETTING GAS. THE ELECTRICAL AND EVERYTHING ELSE WAS ON IN
THE CAR EXCEPT THE ENGINE. THE SYSTEM IN THIS CAR HAS A
DOUBLE FUEL TANK THAT ONLY WORKS ON ONE SIDE. THE ENTIRE
FUEL SYSTEM IS FAULTY. THE MANAGER AT MERCEDES TOLD ME
HIMSELF THAT THIS IS A DESIGN FLAW IN THIS CAR. THERE IS NO
REASON WHY A CAR WITH 24,000 MILES SHOULD HAVE BROKEN
DOWN ON THE SIDE OF THE ROAD BECAUSE THE ENTIRE FUEL
SYSTEM DOES NOT WORK. FAULTY AND HORRIBLE WORKMANSHIP
ON A SUPPOSED LUXURY VEHICLE.

**NHTSA ID Number:** 11353226
**Complaint Date** September 4, 2020
**Incident Date** September 4, 2020
**Consumer Location** MACOMB, MI
**Vehicle Identification Number** 55SWF4JB7FU****
**Summary of Complaint**
I CAN SMELL FUEL NEAR THE PUMP BEFORE WE START CAR IN COLD
IN THE MORNING AND THIS SMELL CAN BE SMELLED UNTIL THE
ENGINE WORKING INTO THE NORMAL OPERATING TEMPERATURE.
FUEL IS A VERY CRITICAL SAFETY PROBLEM AND USUALLY WE
CANNOT TAKE NOTICE OF THIS POTENTIAL PROBLEM.

**NHTSA ID Number:** 11349160
**Complaint Date** August 14, 2020
**Incident Date** November 1, 2019

**Consumer Location** AUBURN, WA
**Vehicle Identification Number** 55SWF4KB5FU****
**Summary of Complaint**
I TOOK MY CAR IN FOR A MULTI POINT INSPECTION AT THE END OF
NOVEMBER 2019 TO MERCEDES OF BELLEVUE. I BEGUN SMELLING
GASOLINE FROM THE INSIDE CABIN OF MY CAR A FEW DAYS AFTER
THE SERVICE AND HAD TO TAKE THE CAR BACK TO THE
DEALERSHIP. THEY FOUND THAT FUEL HOSES GOING TO THE HIGH
PRESSURE FUEL PUMP TO BE LEAKING FUEL. WITH THIS BEING A
POTENTIAL FIRE HAZARD AND A SAFETY ISSUE, I ARGUED WITH THE
DEALER THAT IT SHOULD BE COVERED UNDER WARRANTY, WHICH I
STILL HAD A CPO WARRANTY FROM PURCHASING THE VEHICLE
FROM THIS SPECIFIC DEALERSHIP. I DID SOME RESEARCH ONLINE
AND FOUND THAT, THIS IS A VERY COMMON ISSUE WITH MY
VEHICLE MODEL, 2015 MERCEDES BENZ C300. I AM UNSURE WHY
THIS ISSUE IS NOT YET RECALLED BY THE MANUFACTURER OR WHY
THE DEALERSHIP DID NOT HONOR THIS ISSUE TTO BE COVERED
UNDER WARRANTY.. AS A CONCERNED CUSTOMER OF THE
HAZARDOUS POSSIBILITIES A FUEL LEAK COULD CAUSE, I STILL
MOVED FORWARD WITH PAYING FOR THE REPAIR OUT OF POCKET
VERSUS CONTINUING TO DEBATE WITH THE FINANCE AND SERVICE
PERSONNEL THAT IT SHOULD BE COVERED UNDER WARRANTY THAT
I STILL HAD AT THE TIME.

**NHTSA ID Number:** 11326200
**Complaint Date** May 27, 2020
**Incident Date** May 1, 2020
**Consumer Location** WOODLAND HILLS, CA
**Vehicle Identification Number** WDC0G4JB7GF****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2016 MERCEDES-BENZ GLC300. THE
CONTACT STATED THAT WHILE THE VEHICLE WAS IN FOR SERVICE
AT THE LOCAL DEALER MERCEDES BENZ OF THOUSAND OAKS
LOCATED AT 3905 AUTO MALL DR, THOUSAND OAKS, CA, THE
MECHANIC NOTICED THE ODOR OF FUEL COMING FROM THE
VEHICLE AND DIAGNOSED THAT THE LOW-PRESSURE FUEL LINE
WAS LEAKING AND NEEDED TO BE REPLACED. THE VEHICLE WAS

REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 60,000.

**NHTSA ID Number:** 11326229
**Complaint Date** May 27, 2020
**Incident Date** February 11, 2020
**Consumer Location** ORLANDO, FL
**Vehicle Identification Number** 55SWF8DB9KU****
**Summary of Complaint**
TL* THE CONTACT LEASED A 2019 MERCEDES-BENZ C300. THE CONTACT STATED THAT WHILE DRIVING AT 70 MPH, THE VEHICLE DECELERATED INDEPENDENTLY TO 30 MPH WITH THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE FAILURE WAS EXPERIENCED THREE TIMES. THE VEHICLE WAS TOWED TO THREE UNKNOWN DEALERS WHERE THE VEHICLE WAS DIAGNOSED AND THE CONTACT WAS INFORMED THAT THE HIGH-PRESSURE FUEL PUMP NEEDED TO BE REPLACED. THE ECM WAS ALSO REPLACED HOWEVER, THE REPAIR FAILED TO FIX THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 6,000.

**NHTSA ID Number:** 11320323
**Complaint Date** April 6, 2020
**Incident Date** April 6, 2020
**Consumer Location** TEMPE, AZ
**Vehicle Identification Number** 55SWF4JB7FU****
**Summary of Complaint**
I TOOK MY CAR IN FOR SERVICE B AND WAS TOLD THE LOW PRESSURE FUEL LINES WERE LEAKING. IT IS A FIRE HAZARD, SO IT CANNOT BE IGNORED.THE CAR IS 5 YEARS OLD AND HAS BEEN METICULOUSLY MAINTAINED. IT COST ME $750 TO REPAIR, AND MY VEHICLE WAS OUT OF MANUFACTURER'S WARRANTY. *TR

**NHTSA ID Number:** 11319239
**Complaint Date** March 25, 2020
**Incident Date** March 20, 2020
**Consumer Location** SAN FRANCISCO, CA
**Vehicle Identification Number** 55SWF4JB6FU****
**Summary of Complaint**

THERE'S FUEL SMELL COMING INTO THE CABIN. BROUGHT IT INTO
MERCEDES DEALER SERVICE CENTER AND THEY SAID IT'S 2 BROKEN
FUEL LINE. IT'S A COMMON ISSUE WITH THIS GENERATION C CLASS
BUT THEY REFUSE TO FIX IT UNDER WARRANTY.

**NHTSA ID Number:** 11316065
**Complaint Date** March 4, 2020
**Incident Date** March 2, 2020
**Consumer Location** IRVINE, CA
**Vehicle Identification Number** WDC0G4JBXGF****
**Summary of Complaint**
LEAKAGE IN FUEL SYSTEM (HIGH PRESSURE PUMP). ON GLC 300. GAS
SMALL INSIDE THE CAR. COMPANY DENIED INVESTIGATING OR
PROVIDING MY REFUND FOR REPAIR. I FEEL THIS IS TOTALLY
SAFETY FAILURE OF THE VEHICLE. SO MY CURRENT MILEAGE IS
32908 AND IT IS 2016 MODEL. I BOUGHT THIS VEHICLE BECAUSE THE
COMPANY CLAIMS FOR ITS HIGHEST STANDARDS OF SAFETY. SO I
WANT THE AUTHORITY TO HELP ME IN INVESTIGATING THIS ISSUE
AND PROVIDE ME ASSURANCE AND COVERAGE FOR ANY KIND OF
SAFETY ISSUES IN FUTURE. ALSO, I WANT TO REPORT SOME MINOR
ISSUES ON BREAKS. I SEE SOMETIME THE THERE IS A DELAY IN
ACTION.

HOPE THIS WILL BE INVESTIGATED FOR PREVENTIVE ACTIONS AND
GET MY REFUND FOR FIXING THIS KIND OF SAFETY RELATED
MATTERS. ITS IS TOTAL RESPONSIBILITY OF MANUFACTURER TO
DELIVER THE SAFETY VEHICLE. NOT TO ESCAPE BY SAYING
WARRANTY CLAUSE

**NHTSA ID Number:** 11315833
**Complaint Date** March 3, 2020
**Incident Date** February 23, 2020
**Consumer Location** DUNCANVILLE, TX
**Vehicle Identification Number** 55SWF4JB5GU****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2016 MERCEDES BENZ C300. THE
CONTACT STATED UPON ENTERING THE VEHICLE, THERE WAS AN
ABNORMAL FUEL ODOR IN THE CABIN OF THE VEHICLE. THE

VEHICLE WAS TAKEN TO PARK PLACE MOTORCARS MERCEDES-BENZ
GRAPEVINE LOCATED AT (1300 TEXAN TRAIL, GRAPEVINE, TX 76051)
TO BE DIAGNOSED. THE CONTACT WAS INFORMED THAT THE HIGH-
PRESSURE FUEL LINES NEEDED TO BE REPLACED. THE VEHICLE WAS
NOT REPAIRED. THE VEHICLE WAS NOT COVERED UNDER
WARRANTY. THE MANUFACTURER WAS NOT NOTIFIED OF THE
FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 17,000.

**NHTSA ID Number:** 11315581
**Complaint Date** March 2, 2020
**Incident Date** February 21, 2020
**Consumer Location** CUMMING, GA
**Vehicle Identification Number** 55SWF4KB9FU****
**Summary of Complaint**
CRANKCASE BREATHER HOSE IS LEAKING FUEL.

FUEL LINE IS LEAKING FUEL.

THIS CREATES GAS SMELL IN THE CAR. THIS IS ALSO UNSAFE DUE TO
THE FUEL LEAKAGE.

LOOKS LIKE THIS IS A VERY COMMON PROBLEM ON THESE CARS. IT
SHOULD BE A RECALL.

**NHTSA ID Number:** 11307552
**Complaint Date** February 6, 2020
**Incident Date** February 6, 2020
**Consumer Location** LOS ANGELES, CA
**Vehicle Identification Number** 55SWF4JB0FU****
**Summary of Complaint**
THE VEHICLE HAS 67K MILES. I NOTICED A GASOLINE ODOR COMING
FROM THE AC A MONTH AGO SINCE THEN, THE ODOR INTENSITY HAS
DRASTICALLY INCREASED. THE ODOR USUALLY GOES AWAY AFTER
A FEW MILES, HOWEVER, TODAY THE ODOR DID NOT GO AWAY AND
I NOTICED AN ONSET OF A HEADACHE SINCE COMMENCING THE
DRIVE, I THEN BECAME VERY DROWSY AND WAS VERY CLOSE TO
REAR-ENDING THE VEHICLE IN FRONT OF ME ON THE WAY HOME,
BUT THANKFULLY THE COLLISION WARNING SYSTEM EMITTED A

LOUD SOUND AND I WAS ABLE TO REACT IN TIME TO PRESS THE
BRAKES AND AVOID THE COLLISION. THERE WAS A RECALL ON
3/10/2015 FOR VEHICLES MANUFACTURED BETWEEN APRIL 7, 2014,
AND JULY 25, 2014, FOR AN ISSUE WITH THE FUEL DELIVERY MODULE
AND THE TANK, MY VEHICLE WAS MANUFACTURED JANUARY 2015,
HOWEVER, I BELIEVE THE SAME ISSUE IS CAUSING THE GASOLINE
FUMES I HAVE BEEN EXPERIENCING IN MY VEHICLE AC SYSTEM.

**NHTSA ID Number:** 11301847
**Complaint Date** January 25, 2020
**Incident Date** August 5, 2019
**Consumer Location** ALPHARETTA, GA
**Vehicle Identification Number** 55SWF4JB0GU****
**Summary of Complaint**
FUEL SMELL IN CABIN - FUEL LEAK IN ENGINE COMPARTMENT.
FROM DEALER INVOICE:

FOUND FUEL LINE LEAKING FROM RUBBER LINE THAT COMES FROM
BELL HOUSING FUEL LINE CONNECTOR TO HIGH PRESSURE FUEL
PUMP ON ENGINE HEAD.. R AND R BATTERY GROUND.. R AND R
BELLY PANELS.. DEPRESSURIZE FUEL SYSTEM.. REPLACED RUBBER
FUEL LINE THAT COMES FROM BELL HOUSING FUEL LINE
CONNECTOR TO HIGH PRESSURE FUEL PUMP ON ENGINE HEAD..
CLEANED AWAY CONTRAST SPRAY AND TEST DROVE AGAIN,,
PROBLEM IS RESOLVED.

**NHTSA ID Number:** 11298448
**Complaint Date** January 10, 2020
**Incident Date** January 10, 2020
**Consumer Location** GILBERT, AZ
**Vehicle Identification Number** 55SWF4JB5GU****
**Summary of Complaint**
FUEL LINE LEAK, SMELLS LIKE GASOLINE WHEN HEATER IS TURNED
ON.

**NHTSA ID Number:** 11298138
**Complaint Date** January 9, 2020
**Incident Date** December 23, 2019

**Consumer Location** ARLINGTON, VA
**Vehicle Identification Number** WDC0G4KB8HF****
**Summary of Complaint**
FEED LINE TO HIGH PRESSURE FUEL PUMP LEAKING TO ENGINE
COMPARTMENT CAUSING ODOR WHEN STARTING IN COLD WEATHER
(VEHICLE STATIONARY). HAS BEEN HAPPENING FOR A LONG TIME
BUT SIMPLY DID NOT CONNECT THE DOTS.

**NHTSA ID Number:** 11297698
**Complaint Date** January 7, 2020
**Incident Date** January 5, 2019
**Consumer Location** Unknown
**Vehicle Identification Number** 55SWF4JB2FU****
**Summary of Complaint**
2015 MERCEDES BENZ C300 WITH 65 K MILES. THE SECONDARY HIGH
PRESSURE FUEL PUMP (274070050180) LEAKED GAS SERIOUSLY. IT
WAS THE UNIT ITSELF NOT THE CONNECTIONS OR LINES TO IT.

**NHTSA ID Number:** 11291517
**Complaint Date** December 27, 2019
**Incident Date** December 26, 2019
**Consumer Location** DENVER, CO
**Vehicle Identification Number** 55SWF4KB6FU****
**Summary of Complaint**
A FEW DAYS AGO, I BEGAN SMELLING A STRONG SMELL OF
GASOLINE WHEN I DROVE MY CAR. THIS WENT ON FOR SEVERAL
DAYS, SO I TOOK MY CAR INTO THE DEALERSHIP. AS SOON AS I
DESCRIBED MY PROBLEM TO THE SERVICE STAFF AND BEFORE THEY
CHECKED ME IN, THEY ASKED ME IF THE MODEL WAS A MERCEDES
C300. WHEN I REPLIED THAT IT WAS, THEY SAID THAT THEY HAD
SEEN THIS PROBLEM QUITE OFTEN ON THIS MODEL.

GIVEN THE LOW MILEAGE OF 23,115 MILES ON MY CAR, A FUEL LINE
LEAK WOULD NOT NORMALLY BE EXPECTED TO OCCUR.
CONSIDERING THAT FACT ALONG WITH THE REPORTED
COMMONALITY OF THIS ISSUE, I AM CONCERNED THAT, FOR OTHER
DRIVERS WITH THIS POTENTIAL PROBLEM, THE SYMPTOMS MAY
INVOLVE MORE THAN JUST THE SCENT OF GASOLINE AND RESULT IN

CAR FIRES OR ACCIDENTS. NEITHER THE DEALERSHIP NOR
CORPORATE MERCEDES HAVE BEEN RESPONSIVE TO MY CONCERNS.

**NHTSA ID Number:** 11291179
**Complaint Date** December 25, 2019
**Incident Date** October 25, 2019
**Consumer Location** KEARNY, NJ
**Vehicle Identification Number** 55SWF4KB8FU****
**Summary of Complaint**
FUEL SYSTEM, GASOLINE. THERE IS A FUEL SMELL COMING INSIDE
OF THE CAR THROUGH THE FRONT FILTERS. WE HAVE CHANGED
FUEL INJECTOR RING HOWEVER THE SMELL IS STILL THERE.
MERCEDES DEALER IS NOT WILLING TO DO ANYTHING ABOUT THIS. I
SEE THERE ARE RECALLS ON THE SAME MODELS PRODUCED A YEAR
PRIOR. BELIEVE THIS MIGHT BE THE SAME ISSUE THAT WAS NOT
RESOLVED. NHTSA CAMPAIGN ID: 15V138000

## VIN PASSED ## MERCEDES-BENZ C300 2015 ##

**NHTSA ID Number:** 11290689
**Complaint Date** December 22, 2019
**Incident Date** November 20, 2019
**Consumer Location** WINCHESTER, MA
**Vehicle Identification Number** 55SWF4KB9FU****
**Summary of Complaint**
GASOLINE FUEL HOSE LEAK BETWEEN THE ENGINE AND THE DRIVER
SIDE CAUSING A STRONG GASOLINE SMELL INSIDE THE CABIN AND
UNDER THE HOOD WHEN THE CAR IS RUNNING AND CAUSING A FIRE
HAZARD

**NHTSA ID Number:** 11289846
**Complaint Date** December 18, 2019
**Incident Date** December 16, 2019
**Consumer Location** BRENTWOOD, CA
**Vehicle Identification Number** 55SWF4KB9GU****
**Summary of Complaint**
HOSE CLAMPS ATTACHING THE HIGH PRESSURE FUEL LINE LEADING
FROM THE FIREWALL-MOUNTED FUEL PUMP TO THE CENTRAL FUEL

RAIL FAILED TO MAINTAIN A TIGHT CONNECTION. THIS LEADS TO
FUEL LEAKING PAST THE HOSE CLAMP CONNECTION INTO THE OPEN
ENGINE COMPARTMENT DURING COLD WEATHER (SUB-40 DEGREES
FAHRENHEIT) WHILE THE ENGINE IS RUNNING. WHEN THE AMBIENT
TEMPERATURE IN THE ENGINE COMPARTMENT RISES, EITHER BY
ENVIRONMENT OR BY HEAT GENERATED FROM THE ENGINE, THE
FUEL LEAK SUBSIDES.

SYMPTOMS WHEN THIS OCCURS ARE A VERY STRONG FUEL
SMELL IN THE PASSENGER COMPARTMENT AND ALSO, UPON
FURTHER INSPECTION, OBSERVATION OF LIQUID FUEL POOLING ON
THE TOP SIDE OF THE ENGINE COMPARTMENT UNDER TRAY.

INTERNET RESEARCH ALSO INDICATE THAT THIS IS A FAIRLY
WIDESPREAD PROBLEM AFFECTING AT LEAST 2015-16 W205 MODEL
VEHICLES, AND THAT MULTIPLE MERCEDES-BENZ DEALERSHIPS IN
THE UNITED STATES HAVE COMMUNICATED VERBALLY TO OTHER
CUSTOMERS THAT THIS IS A "KNOWN ISSUE".

**5. NHTSA ID Number:** 11281837
**Complaint Date** November 22, 2019
**Incident Date** September 17, 2019
**Consumer Location** AURORA, CO
**Vehicle Identification Number** 55SWF4KB8FU****
**Summary of Complaint**
STRONG FUEL SMELL IN THE GARAGE AND INSIDE THE VEHICLE
DURING COLD START AFTER THE VEHICLE IS PARKED FOR 8-12
HOURS. THE ISSUE IS EVEN MORE NOTICEABLE DURING COLDER
WEATHER (BELOW 40). THE DEALER ACKNOWLEDGED THIS IS A
COMMON ISSUE FOR C300 AND IS DUE TO A DEFECTIVE CLAMP ON A
FUEL LINE. THE VEHICLE IS AT 44,000 MILES AND 6 MOUNTS OUT OF
WARRANTY. THE FUEL LEAK IS A SAFETY ISSUE AND SHOULD BE
REPAIRED BY THE MANUFACTURER ESPECIALLY IF IS A WELL
KNOWN DEFECT.

**NHTSA ID Number:** 11280299
**Complaint Date** November 15, 2019
**Incident Date** September 1, 2019

**Consumer Location** SOUTH BEND, IN
**Vehicle Identification Number** WDC0G4KBXGF****
**Summary of Complaint**
I PURCHASED THIS MERCEDES NEW IN 2016, THE BRAKES HAVE
SQUEALED EVER SINCE WHEN COLD 32 DEGREES OR LESS.. ONCE IN
AWHILE WHEN WARM. 2 WE SMELLED GASOLINE, WE TOOK IT TO A
REPAIR SHOP, THEY FOUND TWO FUEL HOSES SPRAYED GAS IN A
MIST ESPECIALLY WHEN COLD.. 3 THERE ARE 3 RECALLS OPEN ON
THIS MERCEDES, I TOOK IT IN WHEN THE AIR BAG RECALL ARRIVED
AT OUR HOUSE, I WAS TOLD WE DON'T HAVE PARTS. OUR CAR IS OUT
OF WARRANTY, IT HAS 56000 MILES. I TAKE IT TO A REPAIR SHOP
RUN BY CERTIFIED MERCEDES TECHNICIANS. THANK GOD WE DIDN'T
HAVE A FIRE WITH THE GAS LEAK. I DID SMELL THE GAS WHEN
MOVING THRU THE VENTILATION SYSTEM AND WHEN SITTING AND
THE SMELL WAS ALL AROUND THE CAR.

**NHTSA ID Number:** 11280206
**Complaint Date** November 14, 2019
**Incident Date** October 1, 2018
**Consumer Location** ALLENDALE, NJ
**Vehicle Identification Number** 55SWF4KB5FU****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2015 MERCEDES-BENZ C300W4. WHEN THE
CONTACT ENTERED THE VEHICLE, HE NOTICED A FUEL ODOR. WHILE
THE VEHICLE WAS STOPPED AT A TRAFFIC LIGHT, IT STALLED AND
BEGAN TO ROLL BACKWARDS WITHOUT WARNING. THE CONTACT
TOOK THE VEHICLE TO MERCEDES-BENZ OF PARAMUS (755 NJ-17,
PARAMUS, NJ 07652, (201) 977-6365) AND WAS INFORMED THAT THE
FUEL HOSE AND THE FUEL LINE NEEDED TO BE REPLACED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE AND OFFERED
LITTLE ASSISTANCE. THE VEHICLE WAS NOT REPAIRED. THE
FAILURE MILEAGE WAS APPROXIMATELY 30,000.

**NHTSA ID Number:** 11279530
**Complaint Date** November 12, 2019
**Incident Date** October 7, 2019
**Consumer Location** PLANO, TX
**Vehicle Identification Number** WDDWJ4JB8HF****

**Summary of Complaint**
TL* THE CONTACT OWNS A 2017 MERCEDES-BENZ C300. WHEN THE
CONTACT STARTED THE VEHICLE WITH THE MOBILE APP, SHE
NOTICED A FUEL ODOR EMITTING FROM THE VEHICLE. WHEN THE
VEHICLE WAS STARTED MANUALLY, THE ODOR WAS NOT PRESENT.
THE CONTACT TOOK THE VEHICLE TO PARK PLACE MOTORCARS
DALLAS (LOCATED AT 6113 LEMMON AVE, DALLAS, TX 75209, 877-475-
5033) WHERE IT WAS DIAGNOSED THAT THE FUEL HOSE WAS
LEAKING AND NEEDED TO BE REPLACED. THE VEHICLE WAS
REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE
FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 55,000.

**NHTSA ID Number:** 11278659
**Complaint Date** November 7, 2019
**Incident Date** September 24, 2019
**Consumer Location** Unknown
**Vehicle Identification Number** 55SWF4KB0FU****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2015 MERCEDES-BENZ C300W4. WHEN THE
CONTACT ENTERED THE VEHICLE, SHE NOTICED A STRONG ODOR OF
FUEL. THERE WERE NO WARNING INDICATORS ILLUMINATED. THE
VEHICLE WAS TAKEN TO MERCEDES-BENZ OF FARMINGTON (555 N
BOURNE CIR, FARMINGTON, UT 84025, (801) 447-3300) WHERE IT WAS
DIAGNOSED THAT THE FUEL PUMP WAS FAULTY AND NEEDED TO BE
REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER
WAS MADE AWARE OF THE FAILURE AND OFFERED A 20% DISCOUNT
TOWARDS THE REPAIR COST. THE CONTACT WAS INFORMED TO
CALL NHTSA TO FILE A COMPLAINT. THE CONTACT REFERENCED
NHTSA CAMPAIGN NUMBER: 15V138000 (FUEL SYSTEM, GASOLINE).
THE FAILURE MILEAGE WAS APPROXIMATELY 54,971.

**NHTSA ID Number:** 11276830
**Complaint Date** October 27, 2019
**Incident Date** September 27, 2019
**Consumer Location** MORENO VALLEY, CA
**Vehicle Identification Number** 55SWF4KB5FU****
**Summary of Complaint**

THERE IS A FUEL HOSE (PARTS NUMBER: 274 070 3500) CONNECT TO
THE HIGH PRESSURE PUMP IN FRONT ENGINE AREA. THE FUEL HOSE
WAS FASTENED BY A CLAMP (NOT SURE THE PARTS NUMBER) .
BECAUSE OF THE DESIGN FLAW, THIS CLAMP WILL LOOSE SINCE IT'S
A SNAP JOINT ASSEMBLIES NOT TIGHTEN BY SCREWS. UNDER THIS
SITUATION, THE FUEL HOSE WILL LOOSE AND AFFECTED BY
THERMAL EXPANSION, THIS PROBLEM WILL CAUSE FUEL
LEAK/SEEPING. WE CAN SMELL FUEL NEAR THE PUMP BEFORE WE
START CAR IN COLD IN THE MORNING AND THIS SMELL CAN BE
SMELLED UNTIL THE ENGINE WORKING INTO THE NORMAL
OPERATING TEMPERATURE. FUEL IS A VERY CRITICAL SAFETY
PROBLEM AND USUALLY WE CANNOT TAKE NOTICE OF THIS
POTENTIAL PROBLEM.

**NHTSA ID Number:** 11268937
**Complaint Date** October 16, 2019
**Incident Date** December 1, 2016
**Consumer Location** NICEVILLE, FL
**Vehicle Identification Number** WDC0G4JB0GF****
**Summary of Complaint**
TL* THE CONTACT OWNS A 2016 MERCEDES-BENZ GLC300. THE
CONTACT NOTICED A STRONG FUEL ODOR INSIDE AND OUTSIDE THE
VEHICLE. THE FAILURE OCCURRED PERIODICALLY. THE VEHICLE
WAS TAKEN TO ZT MOTORS OF FORT WALTON BEACH (1000 N BEAL
PKWY NW, FORT WALTON BEACH, FL 32547, (850) 863-8372) TO BE
DIAGNOSED, BUT THE CAUSE OF THE FAILURE COULD NOT BE
DETERMINED. THE VEHICLE WAS NOT REPAIRED. THE
MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE
FAILURE MILEAGE WAS 10,000.

**NHTSA ID Number:** 11207051
**Complaint Date** May 12, 2019
**Incident Date** May 10, 2019
**Consumer Location** STOCKTON, CA
**Vehicle Identification Number** 55SWF4JB7FU****
**Summary of Complaint**
I SMELLED FUEL IN MY GARAGE OCCASIONALY FOR THE PAST 4
MONTHS. I ASSUMED IN WAS THE GAS HEATER BUT WHEN I PARK MY

CAR IN OTHERS GARAGE I SMELLED FUEL. A FRIEND SUGGESTED IT MIGHT BE MY CAR. I TOOK MY CAR INTO SERVICE FOR MY 50K SERVICE AND ASKED IF THEY COULD LOOK INTO. MERCEDES BENZ INFORMED ME IT IS WET AROUND THE FUEL HOSE CONNECTOR. BEFORE I ONLY SMELLED IT TWICE A MONTH IN THE GARAGE. AFTER ONE I GOT IT BACK FROM SERVICE, I SMELLED FUEL INSIDE THE CAR WHILE I'M DRIVING.

**NHTSA ID Number:** 11186581
**Complaint Date** March 13, 2019
**Incident Date** February 1, 2019
**Consumer Location** CROMWELL, IN
**Vehicle Identification Number** 55SWF4JB5FU****
**Summary of Complaint**
LOW PRESSURE FUEL LINE LEAK COULD CAUSE FIRE, FUEL SMELLS VERY STRONG IN THE CABIN I HAVE 2 2015S BOTH HAVE HAD THIS ISSUE ONE IS FROM CALIFORNIA SO IT NOT A SALT ISSUE. HAPPENS ON COLD START

**NHTSA ID Number:** 11186580
**Complaint Date** March 13, 2019
**Incident Date** March 1, 2019
**Consumer Location** CROMWELL, IN
**Vehicle Identification Number** 55SWF4KB0FU****
**Summary of Complaint**
LOW PRESSURE FUEL LINE LEAK COULD CAUSE FIRE, FUEL SMELLS VERY STRONG IN THE CABIN I HAVE 2 2015S BOTH HAVE HAD THIS ISSUE ONE IS FROM CALIFORNIA SO IT NOT A SALT ISSUE. HAPPENS ON COLD START

## <u>CLASS ACTION ALLEGATIONS</u>

93.    Plaintiffs bring this action on behalf of themselves, and on behalf of

the following nationwide class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or

23(b)(3). Specifically, the nationwide class consists of the following:

**<u>Nationwide Class:</u>**
All persons or entities in the United States who are current or former owners and/or lessees of a Class Vehicle (the "Nationwide Class").

94.     In the alternative to the Nationwide Class, and pursuant to FED. R. CIV. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class above:

**<u>California Class:</u>**
All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle (the "California Class").

**<u>Connecticut Class:</u>**
All persons or entities in Connecticut who are current or former owners and/or lessees of a Class Vehicle (the "Connecticut Class").

**<u>New Jersey Class:</u>**
All persons or entities in New Jersey who are current or former owners and/or lessees of a Class Vehicle (the "New Jersey Class").

95.     Together, the California Class, Connecticut Class, and New Jersey Class shall be collectively referred to herein as the "State Classes." Excluded from the Classes are Defendants, their affiliates, employees, officers, and directors, persons, or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definitions.

96.     <u>Numerosity</u>: Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and

identities of individual members of the Classes are unknown at this time, such

information being in the sole possession of Defendants and obtainable by Plaintiffs

only through the discovery process, Plaintiffs believe that thousands of Class

Vehicles have been sold and leased in each of the states that are the subject of the

Classes.

97.    <u>Existence and Predominance of Common Questions of Fact and Law</u>:

Common questions of law and fact exist as to all members of the Classes. These

questions predominate over the questions affecting individual Class members.

These common legal and factual questions include, but are not limited to:

    a.  whether the fuel systems in the Class Vehicles are predisposed to premature failure;

    b.  whether the fuel systems in the Class Vehicles contain a manufacturing and/or materials defect;

    c.  whether the defective fuel lines are common to all or some of the Class Vehicles;

    d.  whether the improperly installed clamps are common to all or some of the Class Vehicles;

    e.  if so, whether the fuel line Defect causes fuel seepage in the Class Vehicles;

    f.  whether Defendants knowingly failed to disclose the existence and cause of the fuel system Fuel Leak Defect in Class Vehicles;

    g.  whether Defendants' conduct violates the Georgia Fair Business Practices Act and Georgia Uniform Deceptive Trade Practices Act;

h.  whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Fuel Leak Defect, Plaintiffs and members of the Class have suffered ascertainable loss of monies and/or property and/or value;

i.  whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Fuel Leak Defect, Plaintiffs and members of the Class have suffered an increased cost of maintenance related to the Class Vehicles; and

j.  whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

98.  <u>Typicality</u>: All of the Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased Class Vehicles with Fuel Leak Defects caused by defective manufacturing processes or defective materials, as did each member of the Class. Furthermore, Plaintiffs and all members of the Classes sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

99.  <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their

counsel.

100.   <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Classes. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes to individually and effectively redress the wrongs done to them. Even if the members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers (VINs), warranty claims, registration records, and the database of complaints.

101.   Defendants have acted, and refused to act, on grounds generally

applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## VIOLATIONS ALLEGED

### COUNT I
**Breach of the Implied Warranty of Merchantability**
**(On Behalf of the California Class, Pursuant to the**
**Song-Beverly Act California Civil Code Section 1791.1)**

102.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

103.   Plaintiff Rosen brings this cause of action against Defendants on behalf of himself and on behalf of the members of the California Class.

104.   Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased.

105.   Defendants provided Plaintiff Rosen and California Class members with an implied warranty that the Class Vehicles and any parts thereof are merchantable and fit for the ordinary purposes for which they were sold. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because, *inter alia*, the Class Vehicles and their fuel systems suffered from an inherent defect at the time of sale and thereafter are not fit for their particular purpose of providing safe and

reliable transportation.

106.    Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their fuel systems manufactured, supplied, distributed, and/or sold by Defendants were safe and reliable for providing transportation; and (ii) a warranty that the Class Vehicles and their fuel systems would be fit for their intended use while the Class Vehicles were being operated.

107.    Contrary to the applicable implied warranties, the Class Vehicles and their fuel systems at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff Rosen and the California Class members with reliable, durable, and safe transportation. Instead, the Class Vehicles are defective, including but not limited to the defective manufacture of their fuel systems.

108.    Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

<u>**COUNT II**</u>
**Breach of Express Warranty**
**(On Behalf of the California Class, Pursuant to the**
**Song-Beverly Act California Civil Code Section 1791.1)**

109.   Plaintiffs and the Classes incorporate by reference each preceding

and succeeding paragraph as though fully set forth at length herein.

110.   Plaintiff Rosen brings this cause of action against Defendants on

behalf of himself and on behalf of the members of the California Class.

111.   Plaintiff Rosen and the California Class members who purchased

or leased the Class Vehicles are "buyers" within the meaning of Cal. Civ. Code.

§ 1791.

112.   The Class Vehicles are "consumer goods" within the meaning of

Cal. Civ. Code § 1791(a).

113.   Defendants are manufacturers of the Class Vehicles within the

meaning of Cal. Civ. Code § 1791(j).

114.   Defendants made express warranties to Plaintiff Rosen and the

California Class members within the meaning of Cal. Civ. Code §§ 1791.2 &

1793.2(d).

115.   Defendants breached these express warranties by selling and

leasing defective Class Vehicles that required repair or replacement within the

applicable warranty period. Despite a reasonable number of attempted repairs,

Defendants have failed to adequately repair the Defect.

116.    Defendants have failed to promptly replace or buy back the vehicles of Plaintiff Rosen and the proposed California Class members as required under Cal. Civ. Code § 1793.2(d)(2).

117.    As a direct and proximate result of Defendants' breach of their express warranties, Plaintiff Rosen and the California Class members received goods in a condition that substantially impairs their value to Plaintiff and the other Class members. Plaintiff Rosen and the California Class members have been damaged as a result of, *inter alia*, overpaying for the Class Vehicles, the diminished value of the Class Vehicles, the Class Vehicles' malfunctioning, out-of-pocket costs incurred, and actual and potential increased maintenance and repair costs.

118.    Pursuant to Cal. Civ. Code §§ 1793.2 & 1794, Plaintiff Rosen and the California Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Class Vehicles or the overpayment or diminution in value of their Class Vehicles as well as reimbursement of out-of-pocket expenses incurred as a result of the Defect.

119.    Pursuant to Cal. Civ. Code § 1794(d), (e), Plaintiff Rosen and the

California Class members are entitled to reasonable costs and attorneys' fees.

## COUNT III

**Violation of California's Consumer Legal Remedies Act,
California Civil Code sections 1750, *et seq*.
(On Behalf of the California Class)**

120.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

121.   Plaintiff Rosen brings this cause of action on behalf of himself and on behalf of the members of the California Class.

122.   Defendants are "persons" as defined by California Civil Code § 1761(c).

123.   Plaintiff Rosen and the members of the California Class are "consumers" within the meaning of California Civil Code § 1761(d).

124.   By failing to disclose and concealing the defective nature of the Class Vehicles' fuel systems from Plaintiff Rosen and prospective Class members, Defendants violated California Civil Code § 1770(a), as they represented that the Class Vehicles and their fuel systems had characteristics and benefits that they do not have, and represented that the Class Vehicles and their fuel systems were of a particular standard, quality, or grade when they were of another. *See* Cal. Civ. Code §§ 1770(a)(5), (7).

125.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

126.   Defendants knew that the Class Vehicles and their fuel systems suffered from an inherent defect, were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

127.   Defendants were under a duty to Plaintiff Rosen and the California Class members to disclose the defective nature of the fuel systems and/or the associated repair costs because:

   a. Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' fuel systems;

   b. Plaintiff and the Class members could not reasonably have been expected to learn or discover that their fuel systems had a dangerous safety defect until the Fuel Leak Defect manifested; and

   c. Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover the Fuel Leak Defect.

128.   In failing to disclose the defective nature of the fuel systems, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

129.   The facts concealed or not disclosed by Defendants to Plaintiff and

the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles or pay a lesser price. Had Plaintiff and other Class members known that the Class Vehicles' fuel systems were defective, they would not have purchased the Class Vehicles or would have paid less for them.

130.    Plaintiff and the Class members are reasonable consumers who do not expect the fuel systems installed in their vehicles to fail prematurely. This is the reasonable and objective consumer expectation relating to the Class Vehicles.

131.    As a result of Defendants' conduct, Plaintiff and Class Members have been harmed and have suffered actual damages in that the Class Vehicles have experienced and will continue to experience premature fuel system failures.

132.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiff and Class members have suffered and will continue to suffer actual damages.

133.    Plaintiff Rosen and the California Class are entitled to equitable relief.

134.    On or about February 22, 2021 Plaintiff Rosen provided

Defendants with notice of their violations of the CLRA pursuant to California Civil Code § 1782(a) concerning the Defect in the Class Vehicles.

135.   At this stage Plaintiff Rosen requests only injunctive relief under the CLRA.  Should Defendants fail to timely satisfy Plaintiff's demand, Plaintiff Rosen will amend the Complaint to seek monetary damages under the CLRA.

## COUNT IV

**Violation of California Business & Professions Code § 17200, *et seq.*
(On Behalf of the California Class)**

136.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

137.   Plaintiff Rosen brings this cause of action on behalf of himself and on behalf of the California Class.

138.   California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

139.   Plaintiff and the Class members are reasonable consumers who do not expect their fuel systems to prematurely fail.

140.   Defendants knew the Class Vehicles and their fuel systems suffered from inherent defects, were defectively manufactured, would fail prematurely,

and were not suitable for their intended use.

141.   In failing to disclose the Fuel Leak Defect, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

142.   Defendants were under a duty to Plaintiff and the Class members to disclose the defective nature of the Class Vehicles and their fuel systems:

    d.   Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' fuel systems;

    e.   Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their fuel systems; and

    f.   Defendants actively concealed the defective nature of the Class Vehicles and their fuel systems from Plaintiffs and the Class.

143.   The facts concealed or not disclosed by Defendants to Plaintiff and the Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase Class Vehicles. Had Plaintiff and other Class members known that the Class Vehicles' fuel systems were defective and posed a safety hazard, then Plaintiff and the other California Class members would not have purchased Class Vehicles, or would have paid less for them.

144.   Defendants continued to conceal the defective nature of the Class

Vehicles and their fuel systems even after Class members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem.

145.    By their conduct, Defendants have engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

146.    Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business and were capable of deceiving a substantial portion of the purchasing public.

147.    As a direct and proximate result of Defendants' unfair and deceptive practices, Plaintiff Rosen and the California Class have suffered and will continue to suffer actual damages.

148.    Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the Business & Professions Code.

**COUNT V**
**Violations of the Connecticut Unfair Trade Practices Act ("CUTPA")**
**(Conn. Gen. Stat. Ann, § 42-110a, *et seq*.)**
**(On Behalf of the Connecticut Class)**

149.    Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

150.   Plaintiff Nassar brings this claim on behalf of himself and the Connecticut Class.

151.   The Connecticut Unfair Trade Practices Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

152.   CUTPA explicitly provides for a private cause of action for anyone who has suffered an ascertainable loss of money or property as a result of the use or employment of a method, act, or practice prohibited by CUTPA. Conn. Gen. Stat. Ann. § 42-110g.

153.   Defendants knew the Class Vehicles and their fuel systems suffered from inherent defects, were defectively manufactured, would fail prematurely, and were not suitable for their intended use.

154.   In failing to disclose the Fuel Leak Defect, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

155.   Defendants were under a duty to Plaintiff Nassar and the Class members to disclose the defective nature of the Class Vehicles and their fuel systems:

> g. Defendants were in a superior position to know the true state of facts about the safety defect in the Class Vehicles' fuel systems;

h. Defendants made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their fuel systems; and

i. Defendants actively concealed the defective nature of the Class Vehicles and their fuel systems from Plaintiffs and the Class.

156. The facts concealed or not disclosed by Defendants to Plaintiff Nassar and the Class members are material in that a reasonable person would have considered them to be important in deciding whether to purchase Class Vehicles. Had Plaintiffs and other Class members known that the Class Vehicles' fuel systems were defective and posed a safety hazard, then Plaintiffs and the other Class members would not have purchased Class Vehicles, or would have paid less for them.

157. Defendants continued to conceal the defective nature of the Class Vehicles and their fuel systems even after Class members began to report problems. Indeed, Defendants continue to cover up and conceal the true nature of the problem.

158. Defendants' conduct, as set forth above, constitutes an unfair method of competition and/or unfair and/or deceptive acts and practices prohibited under CUTPA.

159.   Plaintiffs seek injunctive and declaratory relief, including an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at minimum, to provide Plaintiffs and the Class with appropriate curative notice regarding the existence and cause of the Defect.

160.   As a result of such conduct, Plaintiff and other members of the Connecticut Class have suffered an ascertainable loss of monies and/or property.

161.   Plaintiff and other members of the Connecticut Class are entitled to compensatory damages, as well as costs and reasonable attorneys' fees pursuant to Conn. Gen. Stat. Ann. § 42-110g(d).

162.   Plaintiff and other members of the Connecticut Class are also entitled to punitive damages because Defendants' conduct reveals a reckless indifference to the rights of others and/or an intentional and wanton violation of those rights.

## COUNT VI

**Violations of the New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. §§ 56:8-1, *et seq.* ("NJCFA")**
**(On Behalf of the New Jersey Class)**

163.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

164.   Plaintiff St. Jean, the New Jersey Class members, and Defendants are persons within the meaning of N.J. Stat. Ann. § 56-8-1(d).

165.   Defendants are engaged in the "sale" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

166.  Defendants' advertisements described herein are "advertisements" within the meaning of N.J. Stat. Ann. § 56:8-1(a).

167.   The NJCFA prohibits "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

168.   Defendants employed unconscionable commercial practices in their advertisement and sale of the Class Vehicles, which are defective. Defendants' practices in connection with the advertisement and sale of the Class Vehicles were unscrupulous and demonstrate a lack of honesty and fair dealing.

169.   Defendants engaged in fraudulent and deceptive trade practices, in violation of the NJCFA, by misrepresenting and knowingly concealing the existence of the Defect. Such information was material to a reasonable consumer because, among other things, the Defect can cause a risk of fire, exposure to the

inhalation of fuel vapors, the vehicle to stall, forces consumers to incur additional repair expenses, diminishes the value of Class Vehicles, and represents an unreasonable safety risk to consumers.

170.   Defendants' material misrepresentations and knowing omissions are highly likely to mislead the public and induce consumers to make misinformed purchases.

171.   Defendants owed a duty to disclose material facts about the defective nature of the Class Vehicles because: (1) Defendants had exclusive or superior knowledge of the Defect in the Class Vehicles; (2) Defendants knew that Plaintiff St. Jean and New Jersey Class members were unaware of the Defect in the Class Vehicles; (3) Defendants understood the true facts regarding the Defect in the Class Vehicles, including that they are defective and prone to fuel leaks, would be important to reasonable prospective buyers of the Class Vehicles; and (4) Defendants made representations regarding the quality and functionality of the Class Vehicles that were misleading, deceptive, and incomplete without the disclosure of the true facts regarding the Defect in the Class Vehicles.

172.   The misrepresentations and knowing material omissions described above were uniform across the New Jersey Class. All of the advertising,

promotional materials, and manuals contained the same material misrepresentations and knowing omissions.

173.    The misrepresentations and knowing material omissions were intended to induce Plaintiff St. Jean and New Jersey Class members to purchase Class Vehicles. Plaintiff St. Jean and New Jersey Class members would not have purchased a Class Vehicle, or would have paid less for them, in the absence of Defendants' misrepresentations and knowing material omissions.

174.    Plaintiff St. Jean and New Jersey Class members suffered ascertainable loss as a direct and proximate result of Defendants' unconscionable and deceptive acts and practices. Among other injures, Plaintiffs and New Jersey Class members overpaid for their Class Vehicles, and their Class Vehicles suffered a diminution in value.

175.    As permitted under N.J. Stat. Ann. § 56:8-19, Plaintiff St. Jean and New Jersey Class members seek trebled damages, appropriate injunctive relief, and reasonable attorney's fees.

## COUNT VII

**Violations of Georgia Fair Business Practices Act**
**(O.C.G.A. §§ 10-1-390, *et seq*.)**
**(On Behalf of the Nationwide Class)**

176.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

177.   Defendants are "persons" as defined by the Georgia Fair Business Practices Act ("Georgia FBPA"). O.C.G.A. § 10-1-392(a)(24).

178.   Plaintiffs and Class members are "consumers" within the meaning of the Georgia FBPA. O.C.G.A. § 10-1-392(a)(6).

179.   The purchase or lease of Class Vehicles by Plaintiffs and Class members constituted "consumer transactions" as defined by the Georgia FBPA. O.C.G.A. § 10-1-392(a)(10).

180.   The Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, O.C.G.A. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another,"

and "[a]dvertising goods or services with intent not to sell them as advertised," *id.*
§§ 10-1-393(b)(5), (7), (9).

181.    By failing to disclose the Defect in the Class Vehicles to Plaintiffs and
Class members, Defendants violated the Georgia FBPA, because Defendants
represented that the Class Vehicles had characteristics and benefits that they do not
have, and represented that the Class Vehicles were of a particular standard, quality,
or grade, when they were of another. *See* O.C.G.A. §§ 10-1-393(b)(5) & (7).

182.    In the course of Defendants' business, Defendants intentionally or
negligently concealed and suppressed material facts concerning the Defect.
Defendants accomplished this by failing to disclose the known safety risk, denying
warranty claims arising from the Defect, and denying the existence of the Defect.

183.    Plaintiffs and the Nationwide Class suffered ascertainable loss and
actual damages as a direct and proximate result of Defendants' misrepresentations
and their concealment of and failure to disclose material information. Plaintiffs and
the Nationwide Class members who purchased or leased the Class Vehicles would
not have purchased or leased them at all and/or—if the Vehicles' true nature had
been disclosed—would have paid significantly less for them. Plaintiffs also
suffered diminished value of their Vehicles, as well as lost or diminished use.

184.   Defendants' violations present a continuing risk to Plaintiffs and to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

185.   Plaintiffs and the Nationwide Class members are entitled to equitable relief.

186.   Rule 23 of the Federal Rules of Civil Procedure, which sets out the procedures for pursuing a class action in federal court, unambiguously authorizes any plaintiff, in any federal civil proceeding, to maintain a class action if the Rule 23's prerequisites are met. The prohibition of class actions in O.C.G.A. § 10-1-399(a) is procedural, not substantive, and so directly conflicts with a federal rule of procedure: Rule 23. Therefore Rule 23 controls here pursuant to the Rules Enabling Act, 28 U.S.C. § 2072; *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010); and *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

187.   Thus, pursuant to O.C.G.A. § 10-1-399, Plaintiffs seek, in addition to equitable relief, actual and statutory damages, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA and applicable law.

## COUNT VIII

**Violations of Georgia's Uniform Deceptive Trade Practices Act
(O.C.G.A. §§ 10-1-370, *et seq*.)
(On Behalf of the Nationwide Class)**

188.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

189.   Defendants, Plaintiffs, and the Nationwide Class members are "persons" within the meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA"). O.C.G.A. § 10-1-371(5).

190.   The Georgia UDTPA prohibits "deceptive trade practices" which include the "misrepresentation of standard, quality, or grade of goods and services," "engaging in any other conduct which similar creates a likelihood of confusion or misunderstanding," and "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised." O.C.G.A. § 10-1-372.

191.   By failing to disclose the defective nature of the Class Vehicles to Plaintiffs and the Nationwide Class members, Defendants engaged in deceptive trade practices in violation of the Georgia UDTPA, because Defendants represented that the Class Vehicles had characteristics and benefits that they do not

have, and represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another. *See* O.C.G.A. §§ 10-1- 372(5), (7), (9).

192.   Defendants advertised the Class Vehicles with the intent not to sell them as advertised, in violation of O.C.G.A. § 10-1-372(12).

193.   Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm on owners and purchasers of the Class Vehicles.

194.   Defendants knew before the sale or lease of the Class Vehicles, that the Class Vehicles suffered from an inherent defect, would leak fuel along with risk of stalling and fire, and were not suitable for their intended use for safe transportation.

195.   Defendants had exclusive knowledge of material facts concerning the existence of the Defect in the Class Vehicles. Furthermore, Defendants actively concealed these defects from consumers by denying the existence of the Defect to Class Members who contacted Defendants about the defect, and failing to offer Class Members an effective remedy or solution to the Defect.

196.   Defendants were under a duty to Plaintiffs and the Nationwide Class members to disclose the defective nature of the Class Vehicles, as well as the

associated costs that would have to be repeatedly expended in order to repair the Class Vehicles due to the Defect, because, inter alia: (a) Defendants were in a superior position to know the true state of facts about the Defect in the Class Vehicles; Plaintiffs and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles were defective; and (c) Defendants knew that Plaintiffs and the Nationwide Class members could not reasonably have been expected to learn or discover defect prior to its manifestation.

197.   Despite possessing information to the contrary, Defendants failed to disclose and actively concealed the Defect. The deception made reasonable consumers believe that Class Vehicles were of high quality and manufactured by a company that stood behind its vehicles once they were on the road.

198.   Defendants knew or should have known that their conduct violated the Georgia UDTPA.

199.   In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true cause and remedy of the Defect, Defendants knowingly and intentionally concealed material facts and breached their duty not to do so.

200.   The facts concealed or not disclosed by Defendants to Plaintiffs and the Nationwide Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price. Had Plaintiffs and the Nationwide Class members known about the Defect, they would not have purchased the Class Vehicles or would have paid less for them.

201.   Plaintiffs and the Nationwide Class members, like all objectively reasonable consumers, did not expect their Class Vehicles to contain an undisclosed, dangerous safety defect.

202.   As a result of Defendants' misconduct, Plaintiffs and the Nationwide Class members have been harmed and suffered actual damages in that the Class Vehicles suffered from the Defect, causing inconvenience, creating an unsafe environment for vehicle occupants, and causing Class members to spend money to repeatedly repair or temporarily fix the Class Vehicles.

203.   As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Nationwide Class members have suffered and will continue to suffer actual damages.

204.   Defendants' violations present a continuing risk to Plaintiffs and to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

205.   As a direct and proximate result of Defendants' violations of the Georgia UDTPA, Plaintiffs and the Nationwide Class members have suffered injury-in-fact and/or actual damage.

206.   Plaintiffs seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA and applicable law.

## COUNT IX

### Breach of Express Warranty
### (On Behalf of the Nationwide Class and State Classes)

207.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

208.   Defendants expressly warranted that the Class Vehicles were of high quality and, at a minimum, would actually work properly. Defendants also expressly warranted that they would repair and/or replace defects in material and/or workmanship free of charge that occurred during the New Vehicle Limited Warranty, Extended Limited Warranty, and Certified Pre-Owned warranty periods.

209.   Defendants breached these warranties by selling to Plaintiffs and

Class members Class Vehicles with known fuel system problems, which are not of high quality, and which leak fuel into the engine compartment, resulting in fuel near a potential ignition source within the engine compartment and risk of fire.

210.   As a result of the Defendants' actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

211.   Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold a defective product without informing consumers about the manufacturing and/or material defect. Furthermore, Defendants continue to charge Class members for repairing the defective fuel systems—if they repair them at all—when in fact such repairs are actually necessitated because of Defendants' defective product.

212.   The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored

Defendants. A gross disparity in bargaining power existed between Mercedes-Benz and Class members, and Mercedes-Benz knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

213.    Plaintiffs and Class members have complied with all obligations under the warranties, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

## COUNT X

### Breach of Implied Warranty
### (On Behalf of the Nationwide Class and State Classes)

214.    Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

215.    A warranty that the Class Vehicles were in merchantable condition is implied by law.

216.    These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that there are defects in the Class Vehicles' fuel systems, which are not of high quality, and which fail prematurely and/or fail to function properly, and create the risk of fire. The Defect is a safety-related defect.

217.    Defendants were provided notice of these issues by numerous informal and formal complaints filed against them, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members.

218.    As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiffs and the other Class members have been damaged in an amount to be proven at trial.

## COUNT XI

### Common Law Fraud
### (On Behalf of the Nationwide Class and State Classes)

219.    Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

220.    Defendants made material omissions concerning a presently existing or past fact. For example, Defendants did not fully and truthfully disclose to their customers the true nature of the inherent defect with the Class Vehicles' fuel systems, which was not readily discoverable until after the Vehicles were purchased. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the Fuel Leak Defect and all of the resultant problems.

221.    These omissions were made by Defendants with knowledge of their

falsity, and with the intent that Plaintiffs and Class members rely upon them.

222.   Plaintiffs and Class members reasonably relied on these omissions and suffered damages as a result.

## COUNT XII

### Breach of the Duty of Good Faith and Fair Dealing
### (On Behalf of the Nationwide Class and State Classes)

223.   Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

224.   Pursuant to the law of nearly every state, all contracts contain an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

225.   Defendants breached the covenant of good faith and fair dealing through malicious conduct by, *inter alia*, failing to notify Plaintiffs and Class members of the Fuel Leak Defect in the Class Vehicles, and failing to fully and properly repair this defect.

226.   Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

## COUNT XIII

### Unjust Enrichment
### (On Behalf of the Nationwide Class and State Classes)

227.  Plaintiffs and the Classes incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

228.  This count is pled in the alternative to Plaintiffs' contract-based claims.

229.  Plaintiffs and Class members conferred a benefit on Defendants.

230.  Defendants had knowledge that this benefit was conferred upon them.

231.  Defendants have been and continue to be unjustly enriched at the expense of Plaintiffs, and their retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Classes, respectfully request that this Court:

    A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Classes as defined above;

    B.    appoint Plaintiffs as the representatives of the Classes and their counsel as Class Counsel;

    C.    award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiffs and Class members are

entitled;

D.      award pre-judgment and post-judgment interest on such monetary relief;

E.      grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

F.      award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

Dated: February 24, 2021

Respectfully submitted,

*/s/ E. Adam Webb*

E. Adam Webb
Matthew C. Klase
G. Franklin Lemond, Jr.
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: (770) 444-9325
Facsimile: (770) 217-9950
Adam@WebbLLC.com
Matt@WebbLLC.com
Franklin@WebbLLC.com

Matthew D. Schelkopf
Joseph B. Kenney
Lori G. Kier
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Tel: (610) 200-0581
Facsimile: (610) 421-1326
mds@sstriallawyers.com
jbk@sstriallawyers.com
lgk@sstriallawyers.com

*Attorneys for Plaintiffs*